UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO: 21-126** |
| **EMPIRE BULKERS, LTD., ET AL** | **SECTION: "S"** |

### ORDER AND REASONS

**IT IS ORDERED** that the **Motion to Exclude Expert Testimony of James Dolan** (Rec. Doc. 134) filed by Warlito Tan is **GRANTED in part** and **DENIED in part**;

**IT IS FURTHER ORDERED** that the **Motion to Exclude Expert Testimony of Kristy Echols** (Rec. Doc. 153) filed by Warlito Tan is **DEFERRED**;

**IT IS FURTHER ORDERED** that the United States' **Motion to Exclude Expert Testimony** (Rec. Doc. 155) is **GRANTED in part** and **DENIED in part**, all as set forth herein.

### INTRODUCTION

Detailed facts of this matter have been set forth in prior orders of the court, and thus are not restated here. In the instant motions, the parties seek to exclude the testimony of various expert witnesses based on Daubert v. Merrell Dow Pharm., 509 U.S. 579, 589 (1993), and Federal Rule of Evidence 702. The motions are considered below in turn.

### LEGAL STANDARD

Federal Rule of Evidence 702 provides that for expert testimony to be admissible, "(1) the testimony [must be] based upon sufficient facts or data, (2) ... the product of reliable principles

and methods, and (3) the witness [must have] applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702. This rule requires the district court to act as a gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." Daubert, 509 U.S. at 589. However, "as a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." Primrose Operating Co. v. Nat'l Am. Ins. Co., 382 F.3d 546, 562 (5th Cir. 2004) (quoting United States v. 14.38 Acres of Land, 80 F.3d 1074, 1077 (5th Cir. 1996)). "[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system: 'Vigorous cross-examination [and] presentation of contrary evidence ... are the traditional and appropriate means of attacking shaky but admissible evidence." Id. at 1078, citing Daubert, 509 U.S. at 596.

I. **Motion to Exclude Expert Testimony of James Dolan**

The government seeks to introduce the testimony of James Dolan as an expert engineer and maritime engineer. Dolan's areas of expertise include the design, maintenance, repair, operation, inspection, management, and classification of commercial oceangoing vessels, including engine room equipment and operations, the generation, storage, treatment, maintenance, handling of vessel waste streams, including oily bilge water and sludge, and MARPOL requirements, and safety related issues including fire protection and hazard protection. Defendant does not challenge Dolan's credentials or qualifications, but has identified four areas of concern regarding Dolan's testimony.

First, defendant argues that Dolan's opinions regarding the length of time that the leak

existed in the engine room is speculative, and redundant considering that the crew has testified on numerous occasions on the subject. Essentially, it is the crew's testimony that the oil leak in the engine room was discovered while the Coast Guard was aboard ship for the inspection, immediately reported to the Chief Engineer (defendant Tan), who directed the reporting crew member to make an immediate temporary repair, which he did.

Dolan is expected to testify that the leak he observed did not appear to be recent (due to staining and other factors) and the repair that he observed could not have been executed quickly, due to the fact that it involved a unique pipe, among other reasons. Defendant argues that Dolan does not have expertise to opine on how long it would or should have taken this particular crew to make the repair.

Defendant's motion challenges the basis for Dolan's opinion that the task at issue was time-consuming. The objection may be appropriately addressed on cross-examination, but does not render the testimony inadmissible. Dolan may testify to how involved and time-consuming the repair typically would be, if he knows, and defendant may challenge his opinion through cross-examination and the introduction of countervailing evidence. The motion is denied with respect to this issue.

Defendant also takes issue with Dolan's testifying to the requirements of MARPOL.[1] Defendant argues that the content of the law is not the proper role of an expert, but is reserved to

---

[1] The United States is a signatory to the 1973 International Convention for the Prevention of Pollution from Ships, as amended in 1978. 1340 U.N.T.S. 184; 1340 U.N.T.S. 61. These treaties are collectively called "MARPOL," an abbreviation for maritime pollution.

the court. Defendant urges that by this testimony, the government seeks to have Dolan provide expert testimony that he is guilty.

The government counters that testimony explaining sophisticated aspects of a regulatory system is admissible to assist the trier of fact in understanding obscure terms and technical matters. The government further contends that Dolan will not testify as to whether the Chief Engineer committed a crime, but rather will address the Oil Record Book ("ORB") line by line, and explain what it would have reflected if the Oil Content Meter ("OCM") had been tampered with as opposed to if it had not been tampered with.

Federal Rule of Evidence 704(a) provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue" to be decided by the trier of fact. Nevertheless, it is the province of the court to instruct the jury on the law. Askanase v. Fatjo, 130 F.3d 657, 673 (5th Cir. 1997) (citing Specht v. Jensen, 853 F.2d 805, 807 (10th Cir.1988)). It is the jury's role to determine whether that law was transgressed. Id. Testimony by Dolan that MARPOL requires a certain action and that defendant did not perform it would usurp these roles. To that extent, Dolan's testimony is disallowed.

However, to the extent Dolan's testimony will be introduced to explicate industry standards and practices under MARPOL, and what would be generally expected within the industry in terms of an ORB under those standards, it will be allowed. If in so testifying Dolan relies on or incorporates any formulation of the law with which defendant disagrees, that may be the subject of cross-examination. In connection with that cross-examination, defendant may introduce the actual law in question (to the extent it is relevant). At the close of evidence, the

court will instruct the jury on the law to apply in reaching its verdict.

Defendant also challenges Dolan's testimony regarding the proper procedure for maintaining an ORB, arguing that Dolan's opinion on this matter is not an appropriate basis for convicting the defendant. The government counters that Dolan is expected to testify to a matter within his expertise, specifically, what inspectors, surveyors, and classification societies expect to see with regard to ORBs, what codes are typically used within the ORBs, and thus whether certain types of entries are inaccurate or misleading.

To extent this proposed testimony is distinct from the challenged MARPOL-related testimony discussed above, the court agrees that this testimony is within Dolan's expertise. Defendant's disagreement with the bases for his opinions may be addressed via cross-examination.

Defendant also argues that Dolan's testimony regarding how crews are typically organized on vessels in not necessary, because in this case the actual crew will testify as to how it was organized. The government counters that the M/V JOANNA, like all ships, has a safety management system that outlines the roles of different crew members with specificity, for instance, setting forth the duties and responsibilities of the Chief Engineer. The government states that it is proper expert testimony for Dolan to explain how these matters play out in practice and how the chain of command operates aboard vessels.

The court agrees that this subject matter is within Dolan's expertise, and may be helpful to the factfinder. Accordingly, the motion is denied with respect to this testimony.

**II. Motion to Exclude Testimony of Kristy Echols**

The government has designated as a witness Kristy Echols, a supervisory chemist at the U.S. Coast Guard's Marine Safety Laboratory, with expertise in identifying and analyzing hydrocarbons, specifically, identification of the "fingerprint" of oils found on board ships. The reports submitted in support of her testimony reflect that her testing was inconclusive, except to establish the presence of hydrocarbons in the overboard piping.

At oral argument, the government acknowledged that portions of Echols' testing are not salient to the issues for trial, including the portions of her report reflecting inconclusive results. However, the government continues to urge that some portions remain relevant and admissible.

The court declines to issue a blanket pre-trial ruling admitting or excluding Echols' testimony in the absence of specificity regarding what testimony will be offered. The court directs the government to provide defense counsel with an updated Rule 16(a)(1)(G) summary, within 14 days of entry of this order, accurately reflecting the testimony it intends to offer and the bases therefor. Any subsequent renewed <u>Daubert</u> motion shall be filed not later than 30 days prior to trial. The court therefore defers ruling on the admissibility of Echols testimony.

**III. Government's *Daubert* Motion**

The government has challenged four of defendant's experts, as set forth below.

**A. Antonis Panagiotareas**

Antonis Panagiotareas has been designated by the defendant as a maritime expert and is expected to testify regarding the M/V JOANNA's engine room pollution control systems, design, and crew responsibilities, as well as the fuel oil used on the vessel, the fuel oil heaters, and

6

associated safety issues. The government has not challenged Panagiotareas' credentials and qualifications, but has specified four areas of testimony with which it has concerns.

First, the government objects to Panagiotareas' testifying that it was unlikely that Tan would have noticed the hidden alterations in the equipment, contending that the testimony of anyone except Tan as to what Tan would have noticed is speculative, and whether he actually did notice it is a question for the jury. Defendant has countered that a conflict exists as to how subtle the hidden alteration was, and his expert should be allowed to opine on that.

The purpose of the objected-to testimony is not to elucidate Tan's state of mind, but rather to counter the anticipated suggestion by a government witness that the alteration was obvious and that Tan's statement that he did not see it is not worthy of credence. Because it appears that the government will be presenting evidence that the alteration was obvious, Panagiotareas may testify on this topic.

The government argues that Tan, as Chief Engineer, should have or would have seen that the OCM handle did not work properly, and thus it is entirely reasonable to expect him to investigate further. Thus, it challenges any testimony from Panagiotareas that the systems and procedures in place on the vessel for maintenance of the OWS were complied with, and that maintenance of those systems does not require or contemplate a chief engineer unscrewing, opening, and inspecting the inner workings of the OCM.

The government's assertion that Tan should have acted in some way based on the circumstances is not a reason to exclude testimony to the contrary regarding what the expectations are around OWS maintenance. Panagiotareas may testify, to the extent that he can

within his expertise, as to relevant industry standards and expectations. The government may challenge his opinions on cross-examination or introduce countervailing evidence.

The government's third challenge relates to Panagiotareas' testimony that the alteration had been in place continuously for many years without being discovered during numerous port state and other inspections. The government contends the statement is speculative and no basis is provided for the conclusion. Defendant counters that the statement is based on the numerous prior inspections that did not find it. This is a challenge to the basis for the expert's opinion, but does not render it inadmissible. It may be explored on cross-examination.

The government challenges listed as numbers 4, 6, and 8 in its motion all relate to the testing of equipment. Since the filing of the motion, Magistrate Judge Roby has issued a ruling authorizing further inspection and testing of equipment, which the parties agree renders moot many of those concerns. Accordingly, this portion of the motion is denied as moot, and any issues that remain after testing is complete may be raised at that time.

Challenge number 5 in the government's motion relates to testimony regarding the concentration of pollutants detected during government tests. The government is concerned that the testimony goes to the issue of environmental harm, which is not an issue in this case, and thus irrelevant and prejudicial. Further, Panagiotareas acknowledges that the opinion is based on "limited available evidence."

At oral argument, the parties agreed that the additional testing may resolve the question of the limited evidence upon which the opinion is based. Further, at trial, testimony will be limited to matters relevant to the issues for trial.

In challenge number 7, the government argues that the proposed testimony impermissibly delves into what people believed regarding the OWS and OCM. The government argues that Panagiotareas can testify to what records show, but not to what other people believed.

Counsel for defendant does not dispute this assertion, and agrees that the testimony would be tailored so that it is not directed to what other individuals thought. This portion of the motion is moot.

### B. Katy MacColl

The government originally objected to the introduction of Katy MacColl as an expert on teaching English to non-native speakers and the effects of cultural differences in communications with non-English speakers, on the basis that she was not qualified as an expert. Upon questioning from the court, the government agreed that it did not have an issue with Ms. MacColl testifying as a lay opinion witness, providing the testimony didn't address any testing conducted by Ms. MacColl. Defense counsel agreed to this proviso. This portion of the motion is moot.

### C. Gerasimos Aretos and Iannis Zoumis

These two expert witnesses are expected to testify regarding testing of a new OCM of the same model as the one on board the M/V JOANNA. The government objects to the testimony as cumulative; because it was not afforded a realistic opportunity to test the OCM itself, because it was located in Greece; and because it is not the actual OCM at issue in this case.

Defendant agrees that only one expert of these two experts will be called. Defense counsel further posits that after the testing authorized by Magistrate Judge Roby, the testimony of this expert may be moot. Accordingly, this portion of the motion is denied as premature, and may

be re-urged as necessary following testing. Accordingly,

**IT IS ORDERED** that the **Motion to Exclude Expert Testimony of James Dolan** (Rec. Doc. 134) filed by Warlito Tan is **GRANTED in part** and **DENIED in part**;

**IT IS FURTHER ORDERED** that the **Motion to Exclude Expert Testimony of Kristy Echols** (Rec. Doc. 153) filed by Warlito Tan is **DEFERRED**;

**IT IS FURTHER ORDERED** that the United States' **Motion to Exclude Expert Testimony** (Rec. Doc. 155) is **GRANTED in part** and **DENIED in part**, all as set forth herein.

New Orleans, Louisiana, this __2nd__ day of June, 2022.

_____
**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**